UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GOCE GLIGOROV**,<br><br>        Plaintiff,<br><br>     v.<br><br>**NATION OF BRUNEI**, *et al.*,<br><br>        Defendant. | Civil Action No. 21-cv-1773 (TSC) |

**MEMORANDUM OPINION**

Plaintiff Goce Gligorov, a Slovenian businessman, brings this action against multiple defendants, including the Nation of Brunei, high-ranking officials and others associated with the Brunei government, as well as private companies. Gligorov alleges seven counts arising from an agreement he made with some of the individual defendants and other representatives of the Brunei Government to investigate "alleged wrongful and illegal acts by other Brunei officials" in exchange for $250,000. Second Am. Compl. ¶ 24, ECF No. 29. Defendants Audley Property Management Company Limited, The Dorchester Group, Ltd., and Seven Properties AG (the "Corporate Defendants") have moved to dismiss for lack of personal jurisdiction and failure to state a claim, and Gligorov has moved for jurisdictional discovery. Defs' Mot. to Dismiss, ECF No. 32; Pl.'s Mot. for Jurisdictional Discovery, ECF No. 33. For the reasons below, the court will **GRANT** the Corporate Defendants' Motion to Dismiss for lack of personal jurisdiction and **DENY** Gligorov's Motion for jurisdictional discovery. The court need not reach whether Gligorov has failed to state a claim.

## I. BACKGROUND

Defendants are the Nation of Brunei, the Brunei Investment Agency (BIA), Audley Property Management Limited, Sultan Hassanal Bolkiah, Crown Prince of Brunei Al-Muhtadee Billah, The Dorchester Group, LLC (d/b/a The Dorchester Collection), Seven Properties AG, PG Yusof Sepiuddin, Pehin Nawawi, Pehin Yasmin, HJ Zainal, HJ Aziyan, and Anak Haji Abdul Aziz. ECF No. 29. The Corporate Defendants own and operate properties in the U.K. and Switzerland. ECF No. 29 ¶¶ 5, 8, 9. Gligorov claims Defendants: (1) violated the civil RICO statute, 18 U.S.C. § 1961, resulting in injury to Gligorov's business or property, i*d*. ¶¶ 45–60; (2) engaged in a RICO conspiracy involving "money laundering, terrorist financing, mail and wire fraud, unlawful travel in furtherance of criminal activities, material support of terrorist activities, and other unlawful acts" that injured Gligorov's "business or property," *id*. ¶¶ 61–71; (3) breached a contract to pay Gligorov $250,000 in exchange for his information about "allegations of corruption by certain Brunei officials," *id*. ¶¶ 72–76; (4) received unjust enrichment from their failure to pay Gligorov for the information, *id*. ¶¶ 77–80; (5) engaged in fraud and fraudulent inducement for inducing Gligorov to "provide them with valuable information upon the false representation that he would be paid $250,000," *id*. ¶¶ 81–84; (6) defamed Gligorov by "hav[ing] INTERPOL issue a 'Blue Notice,'" which effectively placed him on an international watch list *id*. ¶¶ 51, 85–89; and (7) tortiously interfered with Plaintiff's "business relations or with reasonable expectation of prospective economic advantage," *id*. ¶¶ 90–93. Counts 1,2, and 7 are asserted against all Defendants. ECF No. 29 at 19, 24, 29. Counts 3, 4, and 5 are asserted against all individual Defendants and the BIA. *Id*. at 25–27. Count 6 is asserted against all individual Defendants and Seven Properties. *Id*. at 28.

## II.     LEGAL STANDARD

In a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving the "factual basis for the exercise of personal jurisdiction over the defendant." *Crane v. New York Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990). "'Conclusory statements' or a 'bare allegation of conspiracy or agency' do not satisfy this burden." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 57 (D.C. Cir. 2017) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)). Unlike the presumption applied to a motion to dismiss for failure to state a claim, in assessing a personal jurisdiction challenge the court does not treat plaintiff's allegations as true. *Myers v. Holiday Inns, Inc.*, 915 F. Supp. 2d 136, 139 (D.D.C. 2013). Rather, it may receive, consider, and weigh affidavits and other relevant materials outside of the pleadings to assist it in determining the pertinent jurisdictional facts. *See United States v. Philip Morris Inc.*, 116 F. Supp. 2d 116, 120 n.4 (D.D.C. 2000).

## III.    ANALYSIS

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). To satisfy due process, a plaintiff must show that there are "minimum contacts" between the defendant and the forum, establishing that the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945). Courts may exercise either general or specific personal jurisdiction: general jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying

suit," whereas specific jurisdiction requires an "affiliation between the forum and the underlying controversy." *Livnat,* 851 F.3d at 56.

  A. General Jurisdiction

A court may exercise general jurisdiction over a corporation where it is incorporated or has its principal place of business; where it is "at home." *Daimler AG v. Bauman*, 571 U.S. 117, 127, 137 (2014). To establish general jurisdiction, a corporation's affiliations with the forum state must be "so continuous and systemic as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citations omitted). In *Daimler* and *Goodyear,* the Supreme Court established a high bar to ensure general jurisdiction would not exist in every state in which a corporation "engages in a substantial, continuous, and systematic course of business." *Brit UW, Ltd. v. Manhattan Beachwear*, LLC, 235 F. Supp. 3d 48, 60–61 (D.D.C. 2017).

Gligorov fails to show that any of the Corporate Defendants are "at home" in the District of Columbia. None of them are incorporated in this district, nor do they have their principal places of business here. ECF No. 38 at 3. Indeed, Gligorov concedes that Audley Property Management Company Limited is based in London, U.K., Dorchester Group Ltd. is headquartered in London, U.K., and Seven Properties AG is located in Meilen, Switzerland. ECF No. 29 ¶¶ 5, 8, 9. Gligorov asserts—without any factual support—that there is a "substantial connection between the [United States] and the defendants in that they do substantial business in United States through various hotels and companies." *Id.* ¶ 16. But he alleges only that the Corporate Defendants have hotels in California and New York. *Id.* This is insufficient to establish that the Corporate Defendants engaged "in a substantial, continuous, and systematic

course of business" in the District of Columbia.  Consequently, this court does not have general jurisdiction over the Corporate Defendants.

    B.  Specific Jurisdiction

"Acts sufficient to subject a non-resident defendant to specific personal jurisdiction resulting from conduct within the District of Columbia are determined by the due process clause and enumerated by the District of Columbia long-arm statute, D.C. Code § 13–423." *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 44 (D.D.C. 2018).  This court may exercise specific jurisdiction over a non-resident defendant if a plaintiff demonstrates that: "(1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (4) the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.'" *Dooley v. United Techs. Corp.*, 786 F. Supp. 65, 71 (D.D.C.1992), abrogated on other grounds by *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087 (D.C. Cir. 2008), (citing *Int'l Shoe Co.*, 326 U.S. at 316).

Gligorov has not established that the Corporate Defendants have engaged in any conduct that brings them within the jurisdiction of this court under D.C. Code § 13–423. Instead, he offers two alternative bases for personal jurisdiction: the RICO Act and Federal Rule of Civil Procedure 4(k)(2).

    1.  Jurisdiction Based on RICO Statute

The federal RICO statue, 18 U.S.C. § 1965, grants a district court jurisdiction over a non-resident defendant if "personal jurisdiction based on minimum contacts is established as to at least one defendant," and "it is shown that the ends of justice require that other parties residing in any other district be brought before the court." *FC Inv. Grp. LC*, 529 F.3d at 1099–

1100, overruled on other grounds by *Erwin-Simpson v. Air. Asia Berhad*, 985 F.3d 883 (D.C. Cir. 2021).  "Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora."  *Id.* at 1100.  Merely invoking the statute does not confer personal jurisdiction, and the court must still make its determination under the D.C. long-arm statute and the Constitution.  *Collingsworth v. Drummond Co. Inc.*, No. CV 19-1263, 2020 WL 2800612, at *7 n.4 (D.D.C. May 29, 2020), aff'd, 839 F. App'x 567 (D.C. Cir. 2021).

Gligorov argues that the court can exercise personal jurisdiction over the Corporate Defendants based on its jurisdiction over the Nation of Brunei because Brunei has an embassy in the District of Columbia and this court has jurisdiction over Brunei under the terrorism exception of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602.  ECF No. 34 at 12.

Under the FSIA, a foreign sovereign is presumptively immune from suit in the United States.  *TMR Energy Ltd. v. State Prop. Fund of Ukraine*, 411 F.3d 296, 299 (D.C. Cir. 2005).  This presumption is only defeated if the plaintiff demonstrates that one of the exceptions to immunity under the FSIA applies: (1) waiver, (2) commercial activities, (3) takings contrary to international law, (4) succession, gifts, and rights in real property, (5) noncommercial torts, (6) arbitral awards, and (7) terrorism.  28 U.S.C. § 1605.  Moreover, the FSIA confers upon district courts personal jurisdiction over foreign sovereigns where proper "service has been made under § 1608" of the Act.  *TMR Energy Ltd.,* 411 F.3d at 300 (holding district court properly asserted personal jurisdiction over foreign sovereign where service was proper, and the case came within one of the FSIA exceptions to immunity).  The state-sponsored terrorism exception is codified under 28 U.S.C. § 1605A and provides that a foreign state is not immune from suit in any case "[1] in which money damages are sought [2] against a foreign state [3] for personal injury or

death that was [4] caused by [5] an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency." 28 U.S.C. § 1605A.

Gligorov claims that Brunei, and specifically its embassy, "finance[d] and support[ed] certain terrorist organizations th[r]ough the use of the secret and confidential diplomatic and communication services located at the Brunei Embassy." ECF No. 34 at 4. Brunei has not been served, but even if service is properly effectuated, this court cannot exercise personal jurisdiction over Brunei under the terrorism exception to the FSIA because Gligorov does not seek money damages for personal injury or death, but rather for violation of the RICO Act, breach of contract, unjust enrichment, fraud and fraudulent inducement, defamation, and tortious interference. ECF No. 29 ¶¶ 45-93. Consequently, the terrorism exception does not apply to Brunei and the court cannot extend personal jurisdiction over the Corporate Defendants under the RICO statue, 18 U.S.C. § 1965(d).

2. Federal Rule of Civil Procedure 4(k)(2)

Fed. R. Civ. P. 4(k)(2) allows a federal court to exercise personal jurisdiction over a defendant "(1) for a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States." *Mwani v. bin Laden*, 417 F.3d 1, 10 (D.C. Cir. 2005). Determining whether a defendant is subject to the jurisdiction of a court "of any state" does not require the court to "traipse through the 50 states, asking whether each could entertain the suit." *Mwani*, 417 F.3d at 11

(quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir.2001)).  If a "defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." *Id.*

Here, there is no dispute that at least some of Gligorov's claims arise under federal law, as Count 1 and 2 allege violations of the federal RICO statute.  ECF No. 29 ¶¶ 45–71.  The Corporate Defendants do not assert that there is jurisdiction over them in any single state.  ECF No. 32.  Assuming service was effectuated properly, the only remaining inquiry is whether the exercise of federal jurisdiction is consistent with the Constitution.

Whether the exercise of jurisdiction comports with the Constitution for purposes of Rule 4(k)(2) depends on whether a defendant has sufficient contacts with the United States as a whole to justify the exercise of personal jurisdiction under the Fifth Amendment Due Process Clause.  *See* Fed. R. Civ. P. 4(k) advisory committee's notes to 1993 amendments; *see also Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651–52 (5th Cir. 2004) (finding court had personal jurisdiction over defendant with sufficient contacts with the United States as a whole); *ISI Int'l*, 256 F.3d at 551 ("So far as the Constitution is concerned, the right question is whether [defendant] has contacts with the United States—as it plainly does.").  The Due Process Clause "protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations,'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 319 ), and "requir[es] that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,'" *id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977)).  "Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully

directed' his activities at residents of the forum," *id.* (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)), "and the litigation results from alleged injuries that 'arise out of or relate to' those activities," *id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)).

In *Mwani v. bin Laden*, the D.C. Circuit Court held that the district court had personal jurisdiction pursuant to Rule 4(k)(2) over a foreign terrorist and terrorist organization in an action brought by Kenyan victims and family members of victims of a bombing outside the American embassy in Kenya. 417 F.3d at 13. Although the bombing occurred in Kenya, the Court found that the foreign terrorist and terrorist organization purposely directed their activities at U.S. residents because the bombing was intended to "cause pain and sow terror in the embassy's home country, the United States." *Id.* The Court also found that the litigation arose out of injuries from or related to the bombing, giving the defendants fair warning that they would be subject to U.S. jurisdiction. *Id.*

In contrast, in *Ofisi v. Al Shamal Islamic Bank,* No. CV 15-2010 (JDB), 2019 WL 1255096, at *1 (D.D.C. Mar. 19, 2019), plaintiffs alleged that BNP Paribas, S.A. ("BNPP"), Al Shamal Bank, the Republic of Sudan, and al Qaeda conspired to defeat U.S. economic sanctions on Sudan by bombing U.S. embassies in Kenya and Tanzania. The district court found that plaintiffs failed to establish that Al Shamal Bank had sufficient minimum contacts with the United States in connection with any conspiracy to defeat U.S. sanctions or in connection with the bombing. *Id.* at 5–6. Similarly, the court found that plaintiffs failed to establish that Al Shamal Bank "purposefully directed" activities at the United States. *Id.* at 6 ("The 'purposefully directed' activities plaintiffs pled in connection with the bombing are al Qaeda's, not Al Shamal's."). The complaint's only specific allegation concerning sanctions-related conduct was

that BNPP, not Al Shamal, had contacts with the United States by processing transactions through financial institutions. *Id.* at 5 ("notably absent are similar specific factual allegations that Al Shamal transacted with banks in the United States or had any contact with agencies like OFAC or other U.S. institutions, in connection with sanctions-related misconduct."). Similarly, the only specific, non-conclusory allegations concerning Al Shamal and the bombing was that Al Shamal was affiliated with, and invested in by Osama bin Laden and al Qaeda, and maintained and serviced al Qaeda bank accounts. *Id.* at 6. Consequently, the court held that "such indirect contacts [were] too attenuated to establish specific jurisdiction" over the bank. *Id.* at 7.

Other Circuits have also considered whether to exercise personal jurisdiction under Rule 4(k)(2) over a foreign defendant based on the defendant's contact with the United States, and required some knowing participation by the foreign defendant. *See e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 675 (2d Cir. 2013) (finding allegations that foreign defendants knowingly maintained bank accounts for individuals associated with a terrorist organization were insufficient to establish personal jurisdiction absent any showing that defendants expressly aimed their conduct at the United States); *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1544 (11th Cir. 1997) (finding personal jurisdiction over foreign corporate defendant that fraudulently offered and sold securities to United States residents).

Here, the allegations in Gligorov's Second Amended Complaint regarding the Corporate Defendants' contact with the United States are similar to the plaintiffs' allegations in *Ofisi* in that they are mostly conclusory, indirect, and lacking in specifics. Gligorov alleges that "individual Brunei defendants and the BIA used the Dorchester Group's bank accounts, with [their] knowledge and cooperation, to conceal and launder substantial amounts of cash, which were then used to finance terrorist organizations." ECF No. 29 ¶ 8. He also alleges that individual

defendants and the BIA used Seven Properties AG "to conceal and launder money used for the financing of terrorist organizations and other illegal activities." ECF No. 29 ¶ 9. He does not specify whether the Corporate Defendants' bank accounts were in the United States or whether any transaction was purposefully directed at residents of the United States, nor does he say what the "illegal activities" were. Gligorov also alleges that the Corporate Defendants made "safe houses" and "safe rooms" in their hotels available so that the Individual Defendants, members of the Brunei government, and representatives of Corporate Defendants could, *inter alia*, create a "campaign to damage and destroy Plaintiff's reputation and business." *See id.* ¶¶ 8, 10, 29–31, 37, 51. But again, he does not allege that any of the "safe houses" were located in the United States. *Id.* ¶¶ 29, 20. He alleges only that the Dorchester Group maintained "safe rooms" in two of their California hotels and that at least one meeting to "discuss the threat posed to defendants…and to destroy Plaintiff's reputation and credibility… too[k] place at the Beverly Hills Hotel." *Id.* ¶ 37. Gligorov cites no facts to indicate that the Dorchester Group knew about these alleged activities, much less participated in them. "[P]laintiffs must allege far more than that [a foreign defendant] acted as 'passive conduit through which [] monies' were transferred, or even that it provided services 'to an organization openly hostile to the United States.'" *Ofisi*, No. CV 15-2010 (JDB), 2019 WL 1255096, at *8. Gligorov has not shown that the Corporate Defendants aimed their conduct at the United States, and therefore this court cannot exercise personal jurisdiction over them.

    C.  <u>Jurisdictional Discovery</u>

Perhaps cognizant of the scant factual basis for jurisdiction, Gligorov has moved for leave to conduct limited jurisdictional discovery. ECF No. 33.

"This Circuit's standard for permitting jurisdictional discovery is quite liberal," and such discovery is permissible even when plaintiffs have "not made out a prima facie case of jurisdiction." *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003); *see also Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983) (noting district court's "broad discretion" to order jurisdictional discovery). To engage in jurisdictional discovery, a plaintiff "must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant." *FC Inv. Grp. LC*, 529 F.3d at 1093–94 (citation omitted). "Mere conjecture or speculation" is not enough, however. *Id.* at 1094. The scope of discovery lies in the district court's discretion, and it may refuse jurisdictional discovery when it does "not see what facts additional discovery could produce that would affect [the] jurisdictional analysis." *Mwani*, 417 F.3d at 16 (affirming the district court's decision to deny jurisdictional discovery where additional discovery would not have changed whether court could exercise personal jurisdiction over defendant).

Here, Gligorov's motion for jurisdictional discovery rests on speculation that the Corporate Defendants have sufficient contacts with the United States, and his requests are broad in scope. ECF No. 33 at 1. He seeks to have each Corporate Defendant disclose the location of their bank accounts, hotels, and other businesses in the United States. *Id.* He also seeks the hotels' "registration records," as well as "phone records, emails and/or fax transmissions, relating to any occupancy of rooms" within the hotels, without any limitation as to date or location. *Id.* But none of this information would help to show whether the Corporate Defendants "purposefully directed" activities toward the United States that resulted in the alleged injuries and that this litigation "arises out of or relate" to those activities. *See Burger King*

*Corp.*, 471 U.S. at 472. Thus, Gligorov has not proffered a sufficient basis for jurisdictional discovery and his motion will be denied.

Because the court concludes that it lacks personal jurisdiction over the Corporate Defendants, it need not reach the Corporate Defendants' remaining arguments. Fed. R. Civ. P. 12(b)(2); *see also Ghebreyesus v. Fed. Democratic Republic of Ethiopia*, No. 21-CV-02865 (CRC), 2022 WL 4534631, at *2 (D.D.C. Sept. 28, 2022) (finding plaintiffs' claims should be dismissed for lack of personal jurisdiction and that the court did not need to address defendants' other arguments).

## IV.  CONCLUSION

For the reasons stated above, the court will GRANT Corporate Defendants' Motion to Dismiss on the ground that the court lacks personal jurisdiction, ECF No. 32, and will accordingly DENY Plaintiff's Motion for Jurisdictional Discovery, ECF No. 33.

Date: January 31, 2023

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge